[Civ. No. 2599. Second Appellate District, Division One.—December 11, 1918.]

## SAMUEL STORROW, Respondent. v. G. G. GREEN, Appellant.

RIGHT OF WAY—ACQUISITION BY GRANT—NONUSER.—While a right of way acquired through user may be abandoned by nonuser, such a right obtained by grant, if not conditional upon use, cannot be forfeited by nonuser.

LANDLORD AND TENANT—PRESUMPTION AS TO OCCUPANCY—ADVERSE POSSESSION.—One who establishes the relationship of landlord and tenant between himself and the owner of property, and enters into possession by reason of such relationship, will be presumed to be in occupancy thereafter as a licensee or by permission, regardless of whether he continues to pay rental or not,

until by some unequivocal act he gives notice of a change of his attitude from that of peaceful to hostile possessor.

Id.—Easement by Occupancy—Essentials.—To perfect an easement by occupancy for five years, the enjoyment must be adverse, continuous, peaceable, and under a claim of legal right so to do, and not by the consent, permission, or indulgence merely of the owner of the alleged servient estate.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Stanley A. Smith, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

C. J. Willett, A. G. Allen and Leonard B. Slosson for Appellant.

Lynn Helm for Respondent.

JAMES, J.—This action was brought by complaint filed in October, 1912, to secure a decree determining that the plaintiff possessed an interest of a right of way in and over a strip of land fifty feet in width, and to enjoin defendant from interfering with the plaintiff in the enjoyment of its use. The judgment of the court was in favor of the plaintiff, and defendant has appealed therefrom and also from an order denying him a new trial.

In February, 1891, defendant acquired by purchase a parcel of land having its westerly frontage along Raymond Avenue in the city of Pasadena. Along the northerly line of this property was a hotel building owned by the defendant, and along the westerly line was a fence. Immediately after making this purchase the defendant sold to one Swales, since deceased, the southerly one hundred and forty feet of the land, measured along the Raymond Avenue side. This left title remaining in defendant to the fifty-foot strip intervening between the hotel property and the northerly line of the property so sold to Swales. In the deed to Swales, however, in addition to granting title to the southerly one hundred and forty feet of the land, the defendant granted the right to use the fifty-foot intervening strip, the term of the deed making the grant (excepting the particular description of the property) reading as follows: "Together with the right of way

for all purposes over that certain parcel of land described.
. . . " Swales having died, his heirs in 1905 conveyed the
property in question, together with the right of way interest,
to this plaintiff. The defendant admitted in this action that
the instruments of conveyance had passed as we have stated.
He asserted in defense the affirmative claim that he had
acquired by adverse user all interest of the plaintiff in the
fifty-foot strip, and further that all right of way privileges
granted under the deeds to Swales, had been lost by nonuser or
abandoned. It is hardly necessary to suggest that in con-
sidering the evidence upon which the trial judge made up his
findings, we must take all of such evidence favorable to the
plaintiff in its strongest effect. In other words, as it is often
said in the decisions, if we find any substantial evidence which
may be used to support all the material findings of the court,
the judgment must be sustained. Therefore, in such state-
ment of the evidence as we are about to append, no considera-
tion is given to evidence introduced by the defendant the
effect of which is merely to contradict the evidence offered by
the plaintiff. It appears from the transcript of the testimony
that when defendant purchased the one hundred and ninety
feet of ground first mentioned, it had upon it a fence along the
entire Raymond Avenue frontage. This fence was still there
when defendant transferred the south one hundred and forty
feet to Swales. The defendant replaced the fence shortly
after the purchase made by him, and it appears that he re-
placed the entire fence at that time, both that along the fifty
feet immediately adjoining the hotel and along the one hun-
dred and forty feet which he had transferred to Swales. At
any rate, the fence was standing along that entire line in the
year 1900, although we cannot determine from any of the
testimony definitely as to how long it remained standing there-
after. It seems quite clear that the fence, long after the date
of the purchase by the plaintiff, still stood along the Raymond
Avenue line for more than the fifty feet next south of the
hotel. At the time defendant Green purchased the property
it was an uncultivated lot. After he acquired the ownership
of it, and after he made his sale to Swales, he began to improve
the ground, particularly the fifty feet immediately adjoining
the hotel, being the fifty feet over which he had granted to
Swales right of way privileges. This fifty-foot strip was
parked by Green, and his manager at the hotel obtained per-

mission to use Swales' one hundred and forty feet for purposes of placing thereon tennis and croquet courts. Some of the gardeners of the defendant planted grass and trees upon the fifty-foot strip and even across on the land of Swales, and the land of Swales was used, under permission obtained from its owner, by the guests of the hotel, for tennis and croquet games. A rental of $50 was paid to Swales for that use for at least one year. Later it is not shown that any rental was collected, but defendant continued to use the ground for the purposes mentioned thereafter and up to at least the year 1909. At this time defendant built a fence along the line dividing the fifty-foot strip from the property of plaintiff, the latter having in the meantime acquired title to the south one hundred and forty feet which has been hereinbefore referred to. Such were the circumstances and conditions surrounding the use to which the land was put, up to the year 1909. That there could have been no abandonment of the right of way admits of little argument under the facts stated. Where an interest in land is acquired through user only, it is very plain that the right so acquired may be abandoned by nonuser. Not so, however, with an interest in real property obtained by grant, and there is no difference in the resulting legal situation between the nonuser of a right of way acquired by grant and the nonuser of any other quality of interest in real property acquired by the same means. This, of course, assuming an unqualified and unconditional grant, such as the one expressed in the deeds here made. If the right of way had been conditional upon use, then the condition should have been expressed; not being expressed, the right acquired will be taken to be what the deed purports to make it—an unlimited, unrestricted right. It seems so plain to us that mere nonuse will not forfeit a right acquired by deed as to make unnecessary the citing of authorities to sustain that proposition. The evidence shows no formal relinquishment of the right of way; neither does it show (assuming that such would be sufficient), acts on the part of the plaintiff or his predecessor in interest which would estop plaintiff from further asserting the right. There is no doubt, either, but that at a considerable time prior to the commencement of this action the defendant did assert a claim adverse to any right of way being possessed by the plaintiff. As has been before stated, the acquiring of the whole one hundred and ninety feet and the selling of the

one hundred and forty feet were practically simultaneous acts. The land was then fenced on the Raymond Avenue side and the defendant continued to keep it so fenced, and by an arrangement with Swales acquired the right to use the one hundred and forty feet sold by him to the latter. Having established the relation of landlord and tenant between himself and Swales, and having entered into possession of the Swales property by reason of the privileges acquired as such tenant, defendant would be presumed to be in occupancy thereafter of the Swales ground as a licensee or by permission, regardless of whether he continued to pay rental for it and until by some unequivocal act he gave notice of a change in his attitude from that of peaceful to hostile possessor. "To perfect an easement by occupancy for five years, the enjoyment must be adverse, continuous, open, peaceable. It must be adverse, and under claim of a legal right so to do, and not by the consent, permission, or indulgence merely of the owner of the alleged servient estate. This is quite obvious in cases where the consent, permission, or license is expressly given. But it is no less true where the permission or license is implied, as it may well be from the facts and circumstances under which the use was enjoyed. The question is one for the jury, or for a court sitting as such, to determine as a fact, in the light of the relations between the parties and all the surrounding circumstances." (*Thomas* v. *England,* 71 Cal. 456, [12 Pac. 491]. See, also, *Abbott* v. *Pond,* 142 Cal. 394, [76 Pac. 60]; *Clarke* v. *Clarke,* 133 Cal. 670, [66 Pac. 10]; *Reed* v. *Smith,* 125 Cal. 491, [58 Pac. 139].) In his testimony given at the trial the plaintiff stated that he first became apprised of the hostile attitude of the defendant with respect to the right of way in 1908, less than five years prior to the commencement of the action. In a deposition taken prior to the trial this witness had made statements somewhat inconsistent with his statement at the trial with reference to this important date; but it was for the trial court to determine as to when it was that defendant gave notice of a hostile claim, and, under any contradictory state of the evidence, that determination is conclusive upon this court. Taking the testimony of the plaintiff as last given, we must conclude that the possession of the defendant did not become hostile until about four years prior to the commencement of the action. For the lack of a contrary claim, evidenced by word or unequivocal action, made more than five years before this

action was commenced, defendant's possession must be held not to have been adverse for the period prescribed by the statute. The mere fact that plaintiff made no attempt to use the right of way indicates no acknowledgment of hostile possession in the defendant. The land of plaintiff had not been built upon, and was not being used by him in any way other than as he permitted the defendant to use it; he had no occasion to go across the fifty-foot strip, but he had allowed the defendant to use it for the purposes before mentioned. The right of way granted is not one that was open to use by the public, but was a right of way simply in the owner of the south one hundred and forty feet of the land to pass across the fifty-foot strip and to and from his own property. Until he desired to make such use of it, there was no occasion for his expressing an objection to the maintenance of the fence on the Raymond Avenue side. As indicated by what has been stated, we find in the record sufficient evidence to sustain the findings of the court upon the issues presented.

The judgment and order are affirmed.

Conrey, P. J., and Myers, J., *pro tem.*, concurred.