JACOB YAGJIAN *vs*. DANIEL F. O'BRIEN & another.[1]

Suffolk. March 16, 1984. — April 26, 1985.

Present: ARMSTRONG, CUTTER, & DREBEN, JJ.

*Way*, Private: extinguishment. *Easement*, Extinguishment. *Adverse Possession and Prescription*.

Maintenance of fencing impeding passage across the entire width of a record right of way for more than twenty years extinguished the right of way by prescription. [735-737]

CIVIL ACTION commenced in the Land Court Department on April 10, 1981.

The case was heard by *William I. Randall*, J.

*John J. Yagjian* for the plaintiff.

*Julian J. D'Agostine* (*Judith Ashton* with him) for the defendants.

ARMSTRONG, J. The question for decision is whether a forty-foot wide, record right of way, leading from a road in Lincoln across the O'Briens' land to the plaintiff's back land, has been extinguished by prescription. The judge of the Land Court so ruled, and the plaintiff appealed.

The right of way in question originated in 1941, in a deed to Winifred A. Lyons from Charles E. Davis, then owner of the front land, which reserved to Davis and his heirs and assigns a right "to pass and repass [and] to install water, gas and electric light lines over a strip of land 40 feet wide," running from the road southwesterly along a side boundary line of Davis's land to the plaintiff's back land, then owned by Davis's wife.[2] The front land stayed in the Lyons family until 1965,

---

[1] Mary T. O'Brien.

[2] A subsidiary question, determined by the judge but not argued in this appeal, is whether the right of way over the defendant's land was appurtenant to the plaintiff's land despite the lack of unity of title in 1941.

when the greater part of it, including the entire portion subject to the right of way, was conveyed to the O'Briens. The O'Briens have built a riding track, which impinges on the right of way, in connection with breeding trotting horses. The back land came by mesne conveyances to the plaintiff in 1953 and has to date remained undeveloped.

The plaintiff testified that in 1953, and from time to time thereafter, he walked across the length of the right of way to his land, unimpeded by fences or walls. He also testified that one of the Lyons family asked his permission at some time to erect a fence and that he gave permission, subject to the condition that the fence would be removed at such time as he wished to make use of the right of way.[3] This testimony, although mentioned in the decision, was not made the subject of a finding; and, when the plaintiff, by way of a timely motion under Mass.R.Civ.P. 52(b), 365 Mass. 817 (1974), to amend the judge's findings, sought the adoption of one corresponding with this testimony, the judge declined. Rather, the judge found that the boundary between the back of the O'Briens' land and the plaintiff's land has been obstructed along its entire length by a combination of partial stone wall and wire fencing unbroken by gate, barway, or stile from 1946 or 1951[4] to the time of

---

[3] The plaintiff also testified that the O'Briens sought his permission before erecting a wooden fence (not along boundary lines but apparently impinging on the right of way) to enclose horses. This testimony was mentioned in the judge's decision but was not the basis of a finding. Because the O'Briens occupied the property only from 1965, the wooden fence in question could not have been the basis for a finding of prescription (the plaintiff having brought this action in 1981). The significance of the testimony is, rather, in its tendency to undercut the judge's general finding that the Lyonses and the O'Briens from 1946 on "exercised complete, continuous dominion and control over the way to the exclusion of all others."

[4] The latter date comes from one of the O'Briens' requests for findings, which was adopted by the judge. The former date comes from the judge's independent findings. The testimony of Ann Lyons supported the finding back to 1946. One portion of the testimony of Daniel O'Brien is correctly cited by the plaintiff as being to the contrary; another portion of his testimony, however, supports a finding that the fence and partial wall extended over the entire boundary line in 1965, when the O'Briens purchased the Lyons property.

suit in 1981. Because of that obstruction, access from the right of way into the plaintiff's land, when possible (the end of the right of way is now overgrown by trees and brush), could be accomplished only on foot and only by passing over the fence or wall or between strands of wire fencing. The maintenance of the fence or wall was not permissive.

The plaintiff is not on sound ground in questioning the adverse or hostile nature of the unbroken fencing. Depending on conditions, cases have reached varying conclusions concerning the adverse character of gates or barways erected by servient owners across a right of way, not to impede use of the way, but to facilitate use of the servient estate. See, e.g., *Short* v. *Devine*, 146 Mass. 119, 124-127 (1888), and cases cited; *Ball* v. *Allen*, 216 Mass. 469, 472-474 (1914); *Merry* v. *Priest*, 276 Mass. 592, 599-600 (1931), and cases cited; *Lemieux* v. *Rex Leather Finishing Co.*, 7 Mass. App. Ct. 417, 422 (1979); *Stucchi* v. *Colonna*, 9 Mass. App. Ct. 851 (1980); 3 Powell, Real Property § 424, at 34-259 (1977). Unlocked gates or barways may have the practical effect of burdening or delaying passage, but, by their very nature, they are consistent with, and contemplate, passage. The cases on this subject have tended to weigh slight inconvenience to the dominant owner's use of the way against the servient owner's freedom to use his property in a reasonable manner for his own benefit and convenience and to strike an equitable balance. The question is whether the interference is so slight as to be reasonable in all the circumstances. *O'Linda* v. *Lothrop*, 21 Pick. 292, 297 (1838). *Hodgkins* v. *Bianchini*, 323 Mass. 169, 173 (1948). *Patterson* v. *Simonds*, 324 Mass. 344, 352-353 (1949). *Western Mass. Elec. Co.* v. *Sambo's of Mass., Inc.*, 8 Mass. App. Ct. 815, 825 (1979). See *Delconte* v. *Salloum*, 336 Mass. 184, 190-191 (1957) (Whittemore, J., dissenting).

Boundary fencing, unbroken, is of a different character. It is meant, unambiguously, to impede passage. Set across a right of way, it is wrongful and actionable. *Weld* v. *Brooks*, 152 Mass. 297, 306 (1890). *Feoffees of the Grammar School in Ipswich* v. *Proprietors of Jeffrey's Neck Pasture*, 174 Mass. 572, 576 (1899). *O'Brien* v. *Murphy*, 189 Mass. 353, 356

(1905). *Downey* v. *H. P. Hood & Sons*, 203 Mass. 4, 11 (1909). *Gadreault* v. *Hillman*, 317 Mass. 656, 662 (1945). *Pappas* v. *Maxwell*, 337 Mass. 552 (1958) (row of bushes planted as fencing). See also Anno., Fence or Gate Across Rights of Way, 52 A.L.R. 3d 9, 87-91 (1973). Compare *Warshauer* v. *Randall*, 109 Mass. 586 (1872); *Mastandrea* v. *Baressi*, 2 Mass. App. Ct. 54 (1974). Contrast *Smith* v. *Langewald*, 140 Mass. 205 (1885) (common farm fencing does not interfere with, and thus is not adverse to, dominant owner's right of flowage, as would be a stone wall). The adverse character of such fencing does not turn on identifying when it was put in place or on finding the actual motives of the individual who built it. *Ottavia* v. *Savarese*, 338 Mass. 330, 333-335 (1959). *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 284 (1976). Restatement of Property § 458 comments c and d (1944). Both are in this case unknown; but except with the dominant owner's permission, not here found, the very maintenance of such a fence is an unprivileged interference with his right of passage, actionable at any time until the passage of the prescriptive period has extinguished the right.[5]

On the judge's findings, therefore, the case falls within the principle of Restatement of Property § 506 (1944), that "[a]n easement is extinguished by a use of the servient tenement by the possessor of it which would be privileged if, and only if, the easement did not exist, provided (a) the use is adverse as to the owner of the easement and (b) the adverse use is, for the period of prescription, continuous and uninterrupted." Where the acts of the servient tenant render the use of only part of a right of way impossible, the easement is extinguished

---

[5] *Castle Associates* v. *Schwartz*, 63 A.D.2d 481 (N.Y. 1978), relied on heavily by the plaintiff, differs from this case in that it involved an unlocated easement of passage. The court there held that a fence was not adverse to the owner of the undeveloped backland until such time as he sought to use the right of passage and asked the servient owner to establish the location of the way. A somewhat analogous Massachusetts case is *Burnham* v. *Mahoney*, 222 Mass. 524, 529 (1916). Although we need not reach the point, it is at least doubtful that the law of this Commonwealth is consistent with the *Castle Associates* decision. See *New England Home for Deaf Mutes* v. *Leader Filling Stations Corp.*, 276 Mass. 153, 158-159 (1931).

only as to that part. *Brooks* v. *West Boston Gas Co.*, 260 Mass. 407, 410-411 (1927). *Pappas* v. *Maxwell*, 337 Mass. 552, 557 (1958). *Lemieux* v. *Rex Leather Finishing Co.*, 7 Mass. App. Ct. at 423-424. The maintenance of fencing impeding passage across the entire width of a right of way, however, is totally inconsistent with the right of passage and, if continued for the prescriptive period, wholly extinguishes the right. Compare *Warshauer* v. *Randall*, 109 Mass. at 589; *New England Home for Deaf Mutes* v. *Leader Filling Stations Corp.*, 276 Mass. 153, 159 (1931); *Cianciulli* v. *Marlowe*, 330 Mass. 410, 412-413 (1953). The judge did not err in ruling that the easement in this case no longer exists.

*Judgment affirmed.*