Carol S. MATOUSH, Petitioner

v.

David H. LOVINGOOD and Debra Lovingood, Respondents.

No. 06SC823.

Supreme Court of Colorado,
En Banc.

March 3, 2008.

Howard Morrison, Colorado Springs, Colorado, Attorney for Petitioner.

Felt, Monson & Culichia, LLC, James W. Culichia, David M. Shohet, Colorado Springs, Colorado, Attorneys for Respondents.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

█ In this adverse possession case, we review the court of appeals' opinion in *Matoush v. Lovingood*, 159 P.3d 741 (Colo.App. 2006).[1] There, the court of appeals concluded that the trial court applied the wrong legal standard to a claim to terminate an easement by adverse possession.[2] The easement at issue here creates a right-of-way across Respondents David and Debra Lovingood's property for access between Petitioner Carol Matoush's property and an alley adjacent to Lovingoods' property. The Lovingoods allege that they have adversely possessed Matoush's right to use the easement as a right-of-way by openly preventing access between Matoush's property and the alley by building and maintaining fences perpendicular to the easement area for the statutorily-mandated period of time for adverse possession.[3] Matoush claims that the statutorily-mandated period of time for adverse possession of an easement that was expressly creat-

---

1. We granted certiorari on the following issue: "Whether an express easement can be extinguished by the owner of the servient estate by adverse possession and, if so, what circumstances commence the prescriptive period."

2. "An easement creates a nonpossessory property right to enter and use land in the possession of another and obligates the possessor [of land] not to interfere with the uses authorized by the easement." Restatement (Third) of Property: Servitudes § 1.2(1) (2000); *see also Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo. 1998).

The Lovingoods' claim is variously called termination of an easement by adverse possession, termination of an easement by prescription, extinguishment of an easement by adverse possession, and extinguishment of an easement by prescription. The Restatement distinguishes prescription from adverse possession, noting that although "[b]oth doctrines permit acquisition of property rights through the passage of time, ... prescription is applied to servitudes [non-possessory estates, such as easements] while adverse possession is applied to possessory estates." Restatement § 2.17 cmt. a. We acknowledge this technical distinction. However, for clarity and consistency, we refer to the claim as termination of an easement by adverse possession.

3. The easement in this case grants Matoush "a perpetual right of way over, under, and across ... [Lovingoods' property] for sewer and water pipes and alley purposes." Because the Lovingoods object only to use of the easement as a right-of-way across their property for access between Matoush's property and the alley, their claim is properly characterized as a partial termination of an easement by adverse possession. *See* Restatement § 7.7 cmt. b ("The extinguishment brought about by prescription may be complete or partial."). However, for clarity and consistency, we refer to the Lovingoods' claim simply as a claim to terminate an easement by adverse possession.

ed but never used, such as the easement in this case, is not triggered until a need for the easement arises, and that, in this case, no need for the easement arose until she tried to sell her property in 2003.

■ An easement is terminated by adverse possession upon a showing that use of the easement area was: (1) adverse to the easement holder's use of the easement; (2) open or notorious; and (3) continuous, without effective interruption, for the statutorily-mandated period of time for adverse possession. To be adverse, use of the easement area must be incompatible or irreconcilable with the easement holder's right to use the easement.

■ Following precedent in other jurisdictions, we hold that whether use of the easement area is an incompatible or irreconcilable use sufficiently adverse to trigger the statutorily-mandated period of time for adverse possession of the easement depends upon whether the easement was expressly created and whether the easement has ever been used by the easement holder. When an easement is expressly created but never used, we hold that use of the easement area is not adverse and will not trigger the statutorily-mandated period of time for adverse possession until the easement holder needs to use the easement, demands to use it, and is denied the right to use it.

In this case, the trial court's findings of fact state that the easement was expressly created by warranty deed in 1901 and that there was no evidence presented at trial regarding whether the easement was used as a right-of-way in 1901. It is undisputed that the easement has never been used as a right-

of-way since 1969. Our review of the record reveals that there was no evidence presented at trial regarding whether the easement was ever used as a right-of-way between 1901 and 1969. For these reasons, we conclude and hold that the Lovingoods' use of the easement area was not adverse to Matoush's right to use the easement as a right-of-way until Matoush needed to use it for that purpose in 2003. Hence, we reverse the court of appeals' decision and affirm the trial court's ruling that Matoush retains her right to use the easement as a right-of-way for access between her property and the alley. We return this case to the court of appeals to be returned to the trial court for an entry of judgment consistent with this opinion.

## II. Facts and Procedural Background

The disputed easement in this case affects three residential properties in a long-established city neighborhood in Colorado Springs, Colorado. Petitioner Carol Matoush is the easement holder who owns the property benefited by the easement, 2108 N. Nevada Ave.[4] Respondents David and Debra Lovingood own one of the properties burdened by the easement, 118 E. Jefferson St.[5] Elizabeth Hayes and her children, Ronald Martwick and Bonnie Wellensiek, own the other property burdened by the easement, 122 E. Jefferson St.[6]

These properties, along with another property owned by Matoush, comprise a 19,000–square–foot block of four city lots, Lots 17, 18, 19, and 20. Lots 19 and 20 were divided to create what is now Matoush's property in 1901 by the warranty deed that created the disputed easement. The rest of the block

---

**4.** Most cases and treatises refer to an easement holder who owns the property benefited by the easement as the "dominant estate owner." *See, e.g., Lazy Dog Ranch,* 965 P.2d at 1234 ("[T]he property benefited by the easement is called the 'dominant estate.' "); *see also* Restatement § 1.1(1)(a) ("A right that runs with land is called a 'benefit' and the interest in land with which it runs may be called the 'benefited' or 'dominant' estate."). In this opinion, we refer to Matoush simply as the easement holder.

**5.** The owner of a property burdened by an easement is customarily called the "servient estate holder." *See, e.g., Lazy Dog Ranch,* 965 P.2d at 1234 ("The property burdened by the easement is

customarily known as the 'servient estate.' "); *see also* Restatement § 1.1(1)(c) ("An obligation that runs with land is called a 'burden' and the interest in land with which it runs may be called the 'burdened' or 'servient' estate."). To ensure simplicity in this opinion, we refer to the Lovingoods not as the servient estate holders, but rather as the owners of the property burdened by the easement.

**6.** Hayes, Martwick, and Wellensiek were defendants at trial along with the Lovingoods, but they did not participate in the appeal below and do not participate in this appeal.

was divided into its current configuration in the years following that conveyance. The block of lots is bounded by other residential property to the north, by N. Nevada Ave. to the east, by E. Jefferson St. to the south, and by an alley to the west. Matoush's property is located on the block's northeast corner and is 5,000 square feet in size.

Matoush's other property, which is where Matoush resides but which is not implicated by this case, is also 5,000 square feet in size and is located on the block's southeast cor-ner. Lovingoods' property is 4,500 square feet in size and is adjacent to the alley. Hayes's property is the same size as Lovingoods' property and is located between Lovingoods' property and Matoush's two properties. The easement is a ten-foot-wide, ninety-foot-long strip of land that connects Matoush's property to the alley. The easement burdens the north, and rear, ten feet of the entire width of Lovingoods' property and Hayes's property. The following schematic depicts the parties' properties:

Matoush acquired title to the property in the block's northeast corner in 1977 through a warranty deed that specifically referenced an easement across the surface and through the subsurface of Lovingoods' property and Hayes's property, reserving "a perpetual right of way over, under, and across the North 10 feet of the West 90 feet of Lot 20 ... for sewer and water pipes and alley purposes." This language was included in each of the eight deeds in the chain of title to Matoush's property, which dates back to 1901.[7] David Lovingood acquired title to his property in 2001 through a warranty deed and conveyed the property to himself and his wife, Debra Lovingood, in 2003. Neither of the Lovingoods' deeds nor the deed of their immediate predecessor in title referenced the easement, although at least one prior deed in the chain of title did.[8] Elizabeth Hayes acquired title to her property in 1969 through a warranty deed that specifically referenced the easement.[9] In 1993, Hayes conveyed the property to herself and her children, Ronald Martwick and Bonnie Wellensiek, through a quit claim deed that did not specifically reference the easement.

When Hayes acquired title to her property in 1969, the easement was being used for sewer pipes and a grease trap. Although the

---

7. The easement was originally created in a warranty deed in 1901 that reserved "a perpetual right of way over under and across the North ten (10) feet of the West ninety (90) feet of said lot twenty (20) for sewer and water pipes and alley purposes."

8. In 1950, the property was conveyed through a deed that specifically referenced "a right of way over, under and across the North 10 feet of the West 45 feet of said Lot 20 for alley, sewer, and water purposes."

9. The warranty deed that conveyed the property to Hayes in 1969 described the property as "[t]he East 45 feet of the West 90 feet of Lots 17, 18, 19 and 20 ... except a right of way over the North 10 feet thereof for sewer, water, and alley purposes."

grease trap has since been removed, the sewer pipes running underground between Matoush's property and the alley are still in use. The trial court found that the easement has not been used as a surface right-of-way across Lovingoods' property and Hayes's property for access between Matoush's property and the alley since at least 1969. At some point in time prior to 1969, fences were built to enclose most of the easement area within the backyards of Lovingoods' property and Hayes's property. No evidence was presented at trial regarding whether the easement was ever used as a right-of-way between 1901 and 1969. Since 1969, these fences have been maintained or replaced.

A small gate in the chain link fence between Lovingoods' property and Hayes's property has been overgrown with shrubbery, and thus has been unused, since at least 1969. Since the early 1980s, the gate has been at least partially obstructed by a short wood fence on Hayes's property. Since the late 1990s, the gate has been fully obstructed by a tall wood fence on Lovingoods' property. The west twenty-eight feet of the easement area is not fenced and remains open to the alley. The trial court also found that a three-wall fiberglass shed located within the easement area on Lovingoods' property is not a permanent structure. There are other structures within the backyards of Lovingoods' property and Hayes's property, but they are not located within the easement area. A carriage house situated within the backyard of Lovingoods' property bounds the easement area's southwest corner. A four-wall metal shed situated within the backyard of Hayes's property bounds the easement area's southeast corner. The rest of the easement area is covered with grass or other landscaping, including a rock garden within the backyard of Hayes's property. A tree was once growing within the easement area, but it was removed several years ago.

In 2003, Matoush attempted to sell her property to a buyer who inquired about using the easement as a driveway for vehicle access between Matoush's property and the alley.

There is a driveway on Matoush's property that provides vehicle access from N. Nevada Ave. to a garage located on Matoush's property. The buyer has proposed removing the driveway, relocating the garage, paving the easement area, and using the easement as a driveway for vehicle access between the alley and the new garage. The buyer would replace the current driveway with an addition to the house and landscaping, thereby preventing vehicle access to Matoush's property from N. Nevada Ave.

Thereafter, Matoush brought an action against the Lovingoods, Hayes, Martwick, and Wellensiek to enforce her right to use the easement as a right-of-way for vehicle access between her property and the alley.[10] The defendants counterclaimed that use of the easement as a right-of-way was terminated by either abandonment or adverse possession. In the alternative, the defendants argued that use of the easement as a paved driveway for vehicle access between Matoush's property and the alley is outside the scope of the easement.

The parties presented evidence on these claims in a trial to the court. Upon hearing all the evidence, the trial court concluded, in a written order, that the easement had not been terminated by either abandonment or adverse possession. Although the trial court's conclusions were unambiguous, its analysis seemed to treat abandonment not as a separate and distinct claim, but rather as an element of the Lovingoods' claim to terminate the easement by adverse possession:

> The [trial] Court would conclude, if it were only considering the general law of adverse possession, that the Defendants have proved by a preponderance of the evidence that they have adversely possessed the easement area for over 18 years. Their possession has been actual in that the easement, except for the 28 foot area on the west, has been fenced off and occupied by the Defendants. Their possession has been open and obvious to the Plaintiff. Their possession has been adverse in that

**10.** As previously mentioned, the easement is currently used only for sewer pipes. At trial, the parties stipulated that the easement would continue to burden Lovingoods' property and

Hayes's property for sewer and water pipes. As such, the only use at issue in this case is use of the easement as a surface right-of-way across the two properties.

the Plaintiff has not been able to use the easement area for an alley. Their possession has been exclusive in that no one except the owner of the property has been able to use the easement area. Their possession has been continuous at least since 1969 and probably longer. The difficulty with the Defendants' argument is that the majority rule in this country is: "an easement cannot be lost be mere nonuse, however long continued, unless accompanied by an affirmative act on the part of the owner of the easement indicating an unequivocal intention to abandon."

The trial court also concluded that the defendants failed to prove that use of the easement as a paved driveway for vehicle access between Matoush's property and the alley is outside the scope of the easement. The trial court acknowledged that Matoush's proposed use of the easement as a driveway is incompatible with the defendants' use of the easement area as a backyard. Nevertheless, the trial court rejected the defendants' claim based on its finding that the defendants failed to present credible evidence regarding use of the easement when it was created. Based on these conclusions, the trial court ruled that the easement would continue to burden Lovingoods' property and Hayes's property as a right-of-way, and that the easement could be used as a paved driveway for vehicle access between Matoush's property and the alley.

The Lovingoods appealed the trial court's ruling, arguing that the trial court incorrectly required proof of abandonment as part of their claim to terminate the easement by adverse possession. The Lovingoods also argued that the trial court incorrectly determined that building and maintaining fences perpendicular to the easement area was insufficiently adverse, as a matter of law, to trigger the statutorily-mandated period of time for adverse possession of the easement. The Lovingoods did not challenge the trial court's conclusions regarding termination of the easement by abandonment or use of the easement as a paved driveway.

On appeal, the court of appeals concluded that the trial court erroneously required proof of abandonment to satisfy the elements of a claim to terminate an easement by adverse possession. Abandonment, the court of appeals held, is not an element of a claim to terminate an easement by adverse possession, but rather is an element of a separate and distinct claim to terminate an easement by abandonment. Accordingly, the court of appeals reversed the trial court's ruling and remanded the case back to that court for findings of fact and conclusions of law to determine whether use of the easement area was: (1) adverse; (2) open or notorious; and (3) continuous without interruption for the statutorily-mandated period of time for adverse possession. As to the element of adversity, the court of appeals specifically instructed the trial court to determine whether building and maintaining fences perpendicular to the easement area was incompatible or irreconcilable with Matoush's right to use the easement as a right-of-way for access to the alley. In articulating this legal standard, the court of appeals rejected Matoush's argument that use of the easement area is not adverse and will not trigger the statutorily-mandated period of time for adverse possession until the easement holder needs to use the easement, demands to use it, and is denied the right to use it, as set forth in the New York intermediate appellate court case, *Castle Associates v. Schwartz*, 63 A.D.2d 481, 407 N.Y.S.2d 717, 723 (N.Y.App.Div.1978).

Thereafter, Matoush petitioned this Court for certiorari review, arguing that the court of appeals erred when it rejected the rule as set forth in *Castle Associates*. Matoush contends that the *Castle Associates* rule applies to this case because the easement was expressly granted by warranty deed; because there is no evidence that the easement has ever been used as a right-of-way for access between Matoush's property and the alley; and because neither Matoush nor her predecessors in interest needed to use the easement until 2003, when a prospective buyer inquired about using the easement as a paved driveway. The Lovingoods urge us to distinguish the *Castle Associates* rule, construing it narrowly as New York's highest court of appeals did in *Spiegel v. Ferraro*, 73 N.Y.2d 622, 543 N.Y.S.2d 15, 541 N.E.2d 15, 17 (1989), by noting that the deed in *Castle*

*Associates* did not specifically identify the easement's location, the easement in *Castle Associates* had never been used for any purpose, and the relevant portion of the easement holder's property in *Castle Associates* had never been developed. After reviewing Colorado cases on adverse possession and the case law from other jurisdictions construing the *Castle Associates* rule, we agree with Matoush that the rule applies to this case.

## III. Analysis

■ Whether Colorado recognizes a cause of action to terminate an easement by adverse possession and, if so, what elements comprise such a claim are questions of law that we review de novo. *See Lakeview Assocs. v. Maes*, 907 P.2d 580, 583–84 (Colo. 1995) ("An appellate court is not bound by conclusions of law reached by lower courts."). However, we will not reverse the trial court's findings of fact unless those findings are clearly erroneous. C.R.C.P. 52.

### A. Termination of an Easement by Adverse Possession

We have not previously considered whether adverse use can terminate an easement under Colorado's adverse possession statute, section 38–41–101(1), C.R.S. (2007). However, we have previously determined that adverse use can create an easement under Colorado's adverse possession statute. *See Lobato v. Taylor*, 71 P.3d 938, 950 (Colo. 2002) (referencing Colorado's adverse possession statute in an action to create an easement by adverse possession); *Allen v. First Nat'l Bank of Arvada*, 120 Colo. 275, 285, 208 P.2d 935, 941 (1949) (same). In Colorado, the General Assembly has declared that the law of adverse possession extends to "*any* right or interest of or to real property." § 38–41–101(1) (emphasis added). The statute, which declares eighteen years to be the statutorily-mandated period of time for adverse possession, reads in full:

> No person shall commence or maintain an action for the recovery of the title or possession or to enforce or establish *any right or interest of or to real property* or make an entry thereon unless commenced *within*

*eighteen years after the right to bring such action or make such entry has first accrued* or within eighteen years after he or those from, by, or under whom he claims have been seized or possessed of the premises. Eighteen years' adverse possession of any land shall be conclusive evidence of absolute ownership.

*Id.* (emphasis added).

■ Because the statute plainly states that it applies to *any* real property interest, and because the statute does not distinguish between possessory interests such as title to land and non-possessory interests such as title to an easement, we conclude that it applies to an action seeking to terminate an easement by adverse possession.

To determine the elements of such a claim, we turn, as we did in *Lobato*, to the Restatement (Third) of Property: Servitudes (2000). *See Lobato*, 71 P.3d at 950 (citing both Colorado case law and the Restatement in its discussion of the elements of a claim to create an easement by adverse possession). The Restatement explains that an easement will be terminated by adverse possession if adverse use of the easement area continues for the statutorily-mandated period of time: "To the extent that a use of property violates a servitude burdening the property and the use is maintained adversely to a person entitled to enforce the servitude for the prescriptive period, that person's beneficial interest in the servitude is modified or extinguished." Restatement § 7.7. The Restatement further explains that the elements of a claim to terminate an easement by adverse possession mirror the elements of a claim to create an easement by adverse possession. *Id.* § 7.7 cmt. b; *see also* Richard R. Powell, *Powell on Real Property* § 34.21[1] (2007) ("As in the case of the creation of an easement by prescription, the uses must be adverse, continuous, uninterrupted, and for the prescriptive period.") (internal cross-reference omitted).

■ Under the Restatement, an easement is created by adverse possession if the adverse use is: "(1) open or notorious, and (2) continued without effective interruption for the prescriptive period." Restatement

§ 2.17. Colorado case law tracks the Restatement's language regarding the elements of a claim to create an easement by adverse possession: "An easement by prescription is established when the prescriptive use is: (1) open or notorious; (2) continued without effective interruption for the prescriptive period; and (3) the use was either (a) adverse or (b) pursuant to an attempted, but ineffective grant." *Lobato*, 71 P.3d at 950 (citing Restatement §§ 2.16–2.17). Hence, the elements of a claim to terminate an easement by adverse possession mirror the elements of a claim to create an easement by adverse possession. Accordingly, an easement will be terminated by adverse possession upon a showing that use of the easement area was: (1) adverse to the easement holder's right to use the easement; (2) open or notorious; and (3) continuous without effective interruption for the statutorily-mandated period of time.

■■■■■■ Abandonment is not an element of a claim to terminate an easement by adverse possession, but rather is a separate and distinct method for terminating an easement. *See Rivera v. Queree*, 145 Colo. 146, 149–50, 358 P.2d 40, 42 (1961) (noting that an action to terminate an easement by abandonment is long-established in Colorado, and citing *Hoff v. Girdler Corp.*, 104 Colo. 56, 59, 88 P.2d 100, 102 (1939)). While a claim to terminate an easement by abandonment focuses on the conduct of the easement holder, a claim to terminate an easement by adverse possession focuses on the nature of the use of the easement area. *Compare Rivera*, 145 Colo. at 149–50, 358 P.2d at 42 (requiring proof that an easement holder intended to abandon the easement), *with* Restatement § 7.7 (requiring proof that use of the easement area was adverse, open and notorious, and continuous).

### B. The Element of Adversity

■■■■■■ As we have noted, a claim to create an easement by adverse possession is similar to a claim to terminate an easement by adverse possession. 7 *Thompson on Real Property* § 60.08(b)(7) (David A. Thomas ed., 2007) ("Just as an easement can be won by prescription, similar to adverse possession, so can it be lost."). What distinguishes these claims is a difficult concept to grasp. When an easement is created by adverse possession, a party uses land that is not in his or her possession, and does so in a way that is adverse to the property rights of the party who possesses the land. In contrast, when an easement is terminated by adverse possession, a party uses land that is in his or her possession, but does so in a way that is adverse to the property rights of the easement holder who does not possess the land. Powell, *supra*, § 34.21[1]. In other words, because an easement does not dispossess the owner of the property burdened by the easement, the owner of the property burdened by the easement retains the right to use the property, including the easement area, in any way that is consistent with the easement holder's use of the easement. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo.1998); *see also* Restatement § 4.9.

■■■■■■ Because of this conceptual difference, a court's evaluation of the element of adversity will be different in a claim to terminate an easement by adverse possession than it is in a claim to create an easement by adverse possession. Powell, *supra*, § 34.21[1]. A claim to terminate an easement by adverse possession requires a stronger showing of adverse use than a claim to create an easement by adverse possession does. *See id.* For instance, the element of adversity in a claim to terminate an easement by adverse possession requires more than a showing of possession of the easement area, which is usually sufficient to demonstrate adversity in a claim to create an easement by adverse possession. *Thompson*, *supra*, § 60.08(b)(7)(i).

■■■■■■ Only use that is "incompatible or irreconcilable with the [easement holder's] authorized right of use" will be sufficient to justify terminating an easement by adverse possession. Powell, *supra*, § 34.21[1]. Therefore, a party claiming to have terminated an easement by adverse possession must prove "that the use interferes significantly enough with the easement owner's enjoyment of the easement to give notice that the easement is under threat." *Thompson*, *supra*, § 60.08(b)(7)(i). The challenge of a court's inquiry into the element of adversity is that

"there is no easily drawn definition of what use is adverse to an easement holder's rights." *Id.* Thus, whether use of the easement area is an incompatible or irreconcilable use sufficiently adverse to trigger the statutorily-mandated period of time for adverse possession depends upon the circumstances of each case. *Id.*

 Nonuse of an easement is a circumstance that must be considered as part of a court's inquiry into the element of adversity. *See* Powell, *supra,* § 34.21[1].[11] When an easement is not in use, the owner of the property burdened by the easement enjoys "an enlarged scope of privileged action." *Id.* Logically then, the owner of a property burdened by an easement enjoys the largest scope of privileged action when the easement has never been used. When an easement is created but never used, the easement holder's property rights are said to remain "titular and dormant." J.E. Macy, Annotation, *Loss of Private Easement by Nonuser or Adverse Possession,* 25 A.L.R.2d 1265 (1952).

Titular or dormant easements illustrate the tension between the rights of the easement holder and those of the owner of the property burdened by the easement. When an easement is expressly created but never used, the extent to which the owner of the property burdened by the easement can use the easement area expands to resemble the owner's right to use the property as if it were unburdened by the easement. At the same time, the easement holder's right to use the easement receives greater protection because the easement holder's right to use the easement has not yet come into functional existence.

 The modern rule in such cases is that use of the easement area, even in a way that prevents use of the easement, is not adverse and will not trigger the statutorily-mandated period of time for adverse possession until the easement holder needs to use the easement, demands to use it, and is refused the right to use it:

> [W]here an easement has been created but no occasion has arisen for its use, the owner of the servient tenement may fence his land and such use will not be deemed adverse to the existence of the easement until such time as (1) the need for the right of way arises, (2) a demand is made by the owner of the dominant tenement that the easement be opened and (3) the owner of the servient tenement refuses to do so.

*Castle Assocs. v. Schwartz,* 407 N.Y.S.2d at 723.[12]

---

11. Usually, the Restatement is helpful in guiding our discussion of issues of first impression. *See* Part III.A., *supra; see also Lobato,* 71 P.3d at 950; *Lazy Dog Ranch,* 965 P.2d at 1234. However, the Restatement does not expressly address whether nonuse of an easement alters a court's inquiry into the element of adversity, stating in its comments that "[t]he prescriptive period begins when a use that constitutes an actionable violation of the servitude occurs." Restatement § 7.7 cmt. b.

 In its illustrations, the Restatement explains that building and maintaining a fence perpendicular to an easement for the statutorily-mandated period of time, thereby preventing the easement holder from using the easement as a right-of-way, will terminate the easement by adverse possession in the absence of other facts or circumstances. *Id.* § 7.7 illus. 1. The Restatement does not indicate in its text, comments, or illustrations whether nonuse of an easement is a circumstance that changes the outcome of such a case. The reporter's notes, however, cite cases that turn on the circumstance of the easement holder's nonuse of the easement. *See Kolouch v. Kramer,* 120 Idaho 65, 813 P.2d 876, 879 (1991); *see also Sabino Town & Country Estates Ass'n v. Carr,* 186 Ariz. 146, 920 P.2d 26, 30 (Ct.App.

1996). Therefore, the Restatement's treatment of this issue is unclear, and we look to other authority.

12. This rule appeared in earlier cases, such as the 1860 decision from which the court in *Castle Associates* derived its holding. *See Castle Assocs.,* 407 N.Y.S.2d at 723 (citing *Smyles v. Hastings,* 22 N.Y. 217, 224 (1860)). *See also Storrow v. Green,* 39 Cal.App. 123, 178 P. 339, 341 (1918) (noting that easement holder "had no occasion to go across" right-of-way); *Schade v. Simpson,* 295 Ky. 45, 173 S.W.2d 801, 802–03 (1943) (noting that need for easement "had not arisen"); *Litchfield v. Boogher,* 238 Mo. 472, 142 S.W. 302, 304 (1911) (noting that easement holder had "no occasion to use alley"); *but see Yeakle v. Nace,* 2 Whart. 123 (Pa.1837) (terminating easement by adverse possession even though easement had never been used because owner of property burdened by easement built fences perpendicular to easement area and maintained them for statutorily-mandated period of time). In these early cases, the distinction between courts' treatment of used and unused easements "is not clearly drawn ... and frequently the facts are not fully reported." Macy, *supra,* 25 A.L.R.2d 1265.

*Castle Associates* is the first modern statement of this rule, and it has been followed in numerous jurisdictions.[13] The easement in *Castle Associates* was expressly created by deed in 1903 for ingress and egress across a piece of property, but the location of the easement was not specifically identified in the conveyance. *Id.* at 722. In 1976, seventy-three years after the conveyance, the easement holder decided to develop the portion of the property near the easement and brought an action to locate and use the easement as a right-of-way. *Id.* The owner of the property burdened by the easement counterclaimed, arguing that he had terminated the easement by adverse possession by building fences around the boundary of the property in 1956 and 1957, and by maintaining the fences since then, thereby preventing the easement holder from using the right-of-way for the statutorily-mandated period of time. *Id.* The *Castle Associates* court disagreed, noting that building a fence on the property burdened by the easement "prior to any demand for an opening of the right of way was not adverse to the existence of the easement." *Id.* at 723. The *Castle Associates* court concluded that the easement holder was entitled to use the right-of-way and determined that the location of the easement would be across the northwest corner of the property burdened by the easement. *Id.*

New York's highest appellate court later construed the *Castle Associates* rule to be a "narrow exception" which applies only to easements that have not been "definitively located and developed through use." *Spiegel v. Ferraro*, 543 N.Y.S.2d 15, 541 N.E.2d at 17 (refusing to apply the *Castle Associates* rule to an easement that was "definitively and functionally in existence" as a right-of-way prior to the construction of a fence that prevented use of the right-of-way). The *Spiegel* court explained that the *Castle Associates* rule is consistent with the general law of adverse possession because the rule ensures that the owner of the property right has notice that his or her right is under threat:

> The theory underlying the exception is that easements not definitively located and developed through use are not yet in functional existence and therefore the owner of the easement could not be expected to have notice of the adverse claim until either the easement is opened or the owner demands that it be opened. It is only at such point, therefore, that the use of the easement by another is deemed to be adverse to the owner and the prescriptive period begins to run. So understood, the exception is consistent with the general theory of adverse possession—that the real owner may, by unequivocal acts of the usurper, have notice of the hostile claim and be thereby called upon to assert his legal title.

*Id.* (internal citations and quotation marks omitted). The *Spiegel* court did not define the phrase "definitively located and devel-

---

13. *See Vandeleigh Indus., LLC v. Storage Partners of Kirkwood, LLC*, 901 A.2d 91, 105 (Del.2006); *Kolouch*, 813 P.2d at 879; *Halverson v. Turner*, 268 Mont. 168, 885 P.2d 1285, 1290 (1994); *City of Edmonds v. Williams*, 54 Wash.App. 632, 774 P.2d 1241, 1244 (1989); *Mueller v. Hoblyn*, 887 P.2d 500, 507 (Wyo.1994); *see also Sabino Town & Country Estates Ass'n*, 920 P.2d at 30 (applying rule only to "claims for partial extinguishment of an easement's scope of use").

In some recent cases, the courts neither apply nor address the *Castle Associates* rule, even though it appears that the easement at issue had never been used for the particular purpose the claimant was seeking to terminate. *See, e.g., Boccanfuso v. Conner*, 89 Conn.App. 260, 873 A.2d 208, 224 (2005) (treating evidence that easement holder's predecessors had parked cars in easement area as prior use of easement as a right-of-way); *White v. Lambert*, 175 W.Va. 253, 332 S.E.2d 266, 267–68 (1985) (concluding that

court "need not address the non-use of a deeded easement question," despite evidence that a portion of the easement area had never been used by easement holders).

At least one court seemed to disapprove of the *Castle Associates* rule, although we note that the disapproval was in dicta: "Although we need not reach the point, it is at least doubtful that the law of this Commonwealth is consistent with the *Castle Associates* decision." *Yagjian v. O'Brien*, 19 Mass.App.Ct. 733, 477 N.E.2d 202, 204 n. 5 (1985); *see also Mueller*, 887 P.2d at 511 (Thomas, J., dissenting) (disapproving of the majority's decision to follow the *Castle Associates* rule). More recently, however, the Massachusetts Land Court issued an unpublished opinion in which it applied the *Castle Associates* rule to a case where "an express, located, record easement" had been used for "some purposes but not others." *Brooks v. Geraghty*, No. 288354, 2005 WL 767867, at *11 (Mass.Land Ct. Apr.6, 2005).

oped through use," and it is unclear whether the phrase means that the easement's location was not specified in the conveyance, that the easement holder's property remained undeveloped, or that the easement had never been used.[14]

Despite possible uncertainty created by *Spiegel* as to the factual circumstances to which the *Castle Associates* rule applies, courts in other jurisdictions have applied the rule to myriad factual circumstances. Courts apply the *Castle Associates* rule irrespective of whether the easement's location was specifically identified in the conveyance, or whether the easement holder's property had been developed.[15] Although these cases are factually unique, courts have consistently applied the *Castle Associates* rule to cases in which the easement at issue was expressly created but never used.

There are a number of policy reasons that support the *Castle Associates* rule. First, as we previously explained, the rule is consistent with the notion that the owner of the property burdened by the easement retains the right to use his or her property in any way that does not interfere with the easement holder's right to use the easement. Second, the rule comports with the long-established principle that an easement cannot be lost by mere nonuse. Third, this rule respects recorded easements, which are easily traceable through title instruments. Fourth, purchasers of property have a duty of inquiry to determine whether an easement burdens the property and are on constructive notice of such easements. Fifth, the purchase price of property reflects the benefit or burden of an easement, and the rule reinforces bargains made between buyers and sellers. Last, the rule prevents an easement holder from incurring litigation and expense

to guard his or her right to use the easement, as one court noted: "[W]ithout such a rule, [easement holders] may feel compelled to start litigation, clear obstacles, or otherwise force an issue . . . merely to keep alive a record easement right, even though the need to use the easement has not yet fully matured." *Brooks v. Geraghty*, No. 288354, 2005 WL 767867, at \*9 (Mass.Land Ct. Apr.6, 2005).

The Lovingoods argue that the *Castle Associates* rule imposes an additional element that is not contemplated by Colorado's adverse possession statute and case law. We think otherwise.

█ As applied, the *Castle Associates* rule does not create a new element for claims to terminate an easement by adverse possession. Rather, the rule informs a court's inquiry as to the element of adversity, specifically when use of the easement area becomes incompatible or irreconcilable so as to trigger the statutorily-mandated period for adverse possession in cases where the easement was expressly created but never used. The *Castle Associates* rule not only reinforces Colorado's policy concerns regarding land use but also conforms to the state's adverse possession statute and case law. On this basis, we follow the *Castle Associates* rule and hold that if an easement is expressly created but never used, then use of the easement area is not adverse and will not trigger the statutorily-mandated period of time for adverse possession until the easement holder needs to use the easement.

### C. Application

█ In this case, the Lovingoods allege that they have adversely possessed Ma-

---

14. One court has characterized *Castle Associates* as involving "an unlocated easement of passage" across "undeveloped backland." *Yagjian*, 477 N.E.2d at 204 n. 5.

15. The following cases differ factually from *Castle Associates* in that the easement's location was specifically identified in the conveyance: *Vandeleigh Indus., LLC*, 901 A.2d at 92–93; *Kolouch*, 813 P.2d at 877; *Halverson*, 885 P.2d at 1287; *Mueller*, 887 P.2d at 503. *See also Sabino Town & Country Estates Ass'n*, 920 P.2d at 29 (noting that easement's location had been developed

through use of easement for "hiking, jogging, horseback riding, and some moped riding").

The following cases differ factually from *Castle Associates* in that the easement holder's land had been developed: *Sabino Town & Country Estates Ass'n*, 920 P.2d at 29 (residence); *Vandeleigh Indus., LLC*, 901 A.2d at 93 (storage facility); *Halverson*, 885 P.2d at 1287–88 (residence). *See also Mueller*, 887 P.2d at 503 (implying development of easement holders' properties by noting that easement holders accessed their properties via a "mile-long driveway").

toush's right to use the easement as a right-of-way by maintaining fences perpendicular to the easement area, thereby preventing access between Matoush's property and the alley for the statutorily-mandated period of time. Matoush contends that the *Castle Associates* rule applies here and argues that the Lovingoods' use of the easement area was not adverse until she needed to use the easement as a surface right-of-way in 2003, when a prospective buyer inquired about using the easement as a paved driveway. The Lovingoods argue that the *Castle Associates* rule does not apply to this case because the easement's location is specifically identified in the warranty deed and because the easement has been used by Matoush for sewer pipes.

As previously discussed, other jurisdictions have applied the *Castle Associates* rule even if the easement's location was specifically identified in the conveyance and even if the claim was to terminate only part of the easement by adverse possession. In other words, courts in other jurisdictions determine whether the *Castle Associates* rule applies by considering whether the easement was expressly created and whether the easement has ever been used for the particular purpose the claimant is seeking to terminate. Hence, whether the *Castle Associates* rule applies to this case, as Matoush argues, depends upon whether the easement was expressly created and whether it has ever been used as a right-of-way. The fact that the easement has been used for sewer pipes since at least 1969 is irrelevant to the Lovingoods' claim that they have terminated Matoush's right to use the easement as a surface right-of-way.

It is undisputed that the easement was expressly created by warranty deed in 1901. It is also undisputed that the easement has not been used as a right-of-way for access between Matoush's property and the alley since at least 1969. As to whether the easement was used as a right-of-way prior to 1969, the trial court found that there was no evidence presented at trial regarding use of the easement in 1901, other than speculation that the easement may have been used for coal deliveries by wagon. This finding of fact was made in connection with the trial court's determination that use of the easement as a

paved driveway is within the scope of the easement. Our review of the record reveals that there was no evidence presented at trial regarding whether the easement was ever used as a right-of-way between 1901 and 1969.

We note that a small gate is located in the chain link fence between Lovingoods' property and Hayes's property, but it has been overgrown with shrubbery since at least 1969 and has been obstructed by at least one fence since the early 1980s. Whether the existence of this small gate demonstrates that the easement has been used as a right-of-way has never been argued by the parties. For this reason, and because the Lovingoods do not challenge the sufficiency of evidence presented at trial, we defer to the trial court's findings of fact. *See First Interstate Bank v. Tanktech, Inc.,* 864 P.2d 116, 122 (Colo.1993) ("We defer to findings of fact by the trial court unless clearly erroneous and not supported by the record.").

Although the trial court made its findings of fact in connection with a different claim than the one that is raised in this appeal, we conclude that the trial court's findings of fact are adequately developed and sufficiently related to the key legal issue in this appeal to support our decision to resolve this case on the merits. *See ITT Diversified Credit Corp. v. Couch,* 669 P.2d 1355, 1360 (Colo. 1983) (resolving case on the merits where facts were not disputed and pivotal issues involved questions of law); *see also People v. D.F.,* 933 P.2d 9, 14 (Colo.1997) (noting that we remand for further findings of fact when appellate review is hindered by an absence of findings of facts that are key to contested issues, or when unresolved evidentiary conflicts exist with regard to material facts).

Because there was no evidence presented at trial regarding use of the easement in 1901 or regarding whether the easement was ever used as a right-of-way between 1901 and 1969, and because there is undisputed evidence that the easement has never been used since at least 1969, we hold that the *Castle Associates* rule applies to this case and that the Lovingoods' use of the easement area was not adverse to Matoush's right to use the easement as a right-of-way until Matoush

needed to use the easement for that purpose in 2003. Therefore, the Lovingoods have not terminated Matoush's right to use the easement as a surface right-of-way.

## IV. Conclusion

We reverse the court of appeals' decision, affirm the trial court's ruling that Matoush retains her right to use the easement as a right-of-way for access between her property and the alley, and return this case to the court of appeals to be returned to the trial court for an entry of judgment consistent with this opinion.

Justice EID, concurring.

I join the opinion of the court. I write separately, however, to note my disagreement with the dissenting opinion's suggestion that the court's ruling is inconsistent with Colorado law and based on principles "borrow[ed]" from elsewhere. Dissent op. at 1276.

It is well established under Colorado law that servient estate owners, such as the Lovingoods, may use their property in any way not inconsistent with the easement holder's interest. *See, e.g., Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo. 1998); *Bijou Irrigation Dist. v. Empire Club*, 804 P.2d 175, 183 (Colo.1991) (citing cases). Thus, the servient estate owner cannot demonstrate adverse possession simply by showing that he used the property, because he is clearly entitled to do so as the owner of the property. Instead, the servient estate owner must show that his particular use of the property is clearly inconsistent and incompatible with the easement holder's interest in order to show that the use is truly "adverse." Maj. op. at 1270–71; § 38–41–101(1), C.R.S. (2007).

In this case, we consider what sort of use by the servient estate owner is required to show adversity when the easement holder has not developed the easement in any way. Where, as here, an easement holder has not developed the easement, the servient estate owner may use the easement area to a far greater extent than in a case involving a developed easement. By way of example, let us suppose that Matoush had developed the easement as a driveway in order to access the alley with her vehicle. Then, let us suppose that the Lovingoods erected the structures that they did over the driveway (i.e., the fencing, the grass, and the shed). Those uses of the easement area would easily be deemed inconsistent and incompatible with Matoush's interest in having a clear path to the alley. Here, by contrast, Matoush had not developed the easement, and therefore the structures that were built by the Lovingoods—all of which could be easily removed at some future point when Matoush wanted to use the easement—were not inconsistent or incompatible with Matoush's interest. Adversity of use cannot be determined in a vacuum, but rather must be determined in comparison to the interest sought to be extinguished—in this case, an undeveloped easement.

In my view, the analysis the court employs today is simply an application of a longstanding principle of Colorado law—namely, that the servient estate owner may use his property to the fullest extent as long as that use is not inconsistent with the easement holder's interest, and that therefore only a use that is clearly inconsistent and incompatible with that interest will be deemed "adverse"—to a situation involving an undeveloped easement. As such, it does not borrow a principle from other jurisdictions, as the dissent suggests, but rather finds instructive a number of cases from other jurisdictions that apply the same principle we have recognized to facts similar to those presented here.[1] *See Zab,*

---

1. *See* maj. op. at 1271–73 (citing, inter alia, *Kolouch v. Kramer*, 120 Idaho 65, 813 P.2d 876, 879–80 (1991)(applying principle that servient estate owner's use must be clearly inconsistent with easement holder's interest to be adverse); *Vandeleigh Indus., LLC v. Storage Partners of Kirkwood, LLC*, 901 A.2d 91, 105 (Del.2006) (same); *Halverson v. Turner*, 268 Mont. 168, 885 P.2d 1285, 1290 (1994) (same); *City of Edmonds*

*v. Williams*, 54 Wash.App. 632, 774 P.2d 1241, 1243–44 (1989) (same); *Mueller v. Hoblyn*, 887 P.2d 500, 504, 507 (Wyo.1994) (same); *Brooks v. Geraghty*, No. 288354, 2005 WL 767867, at *6 (Mass.Land Ct. Apr.6, 2005) (same)). *See also Smith v. Muellner*, 283 Conn. 510, 932 A.2d 382, 389–90 (2007) (concluding that temporary structures in easement area were not inconsistent

*Inc. v. Berenergy Corp.,* 136 P.3d 252, 262 (Colo.2006) (Eid, J., specially concurring).

Justice COATS, dissenting.

I too would find that an easement is a right or interest in real property, the exercise or enforcement of which may be lost by failing to take appropriate action within the statutorily prescribed limitations period; but unlike the majority, I can find no justification for the judicial imposition of a special rule of accrual for one narrow class of easements, largely exempting them from loss by adverse possession. It seems clear that the majority's new rule, modeled after variations recently adopted in a handful of other jurisdictions, does not reflect the common law of England and, as best I can determine, does not even embody the rationale of the jurisdiction that thought it up. Most importantly, however, even if I considered such a rule meritorious policy, I would nevertheless reject its judicial adoption as a flagrant usurpation of the legislative function, allocated elsewhere by our constitution.

Despite the majority's protestations to the contrary, in my view it carves out an exception to section 38–41–101 of the revised statutes, a legislatively prescribed bar to any action to enforce an interest in real property not brought within eighteen years after the right to do so first accrues. Solely for easements that were expressly created but never yet put to use, the majority declares that a cause of action to enforce the easement against obstruction by the servient estate accrues only upon need, demand, and refusal, rather than simply upon open, notorious, and incompatible usage by the servient estate.

Even in New York, the state from which the majority borrows the idea for this exception, *see Castle Associates v. Schwartz,* 63 A.D.2d 481, 407 N.Y.S.2d 717, 723 (N.Y.App. Div.1978), that jurisdiction's high court limits the exception's applicability to easements the precise locations of which are as yet undetermined. *See Spiegel v. Ferraro,* 73 N.Y.2d 622, 543 N.Y.S.2d 15, 541 N.E.2d 15, 17 (1989) (explaining *Castle* as addressing only unlocated easements, like the one actually involved in that case). At least when limited in this fashion, the rule is rationally related to the important requirement of notice to the dominant estate, which has always been integral to acquisition by adverse possession.

By contrast, where, nonuse notwithstanding, there is certainty about the location of the easement (as in this case) the majority's policy justifications amount to little more than arguments against adhering to the doctrine of adverse possession. By shifting the focus of "adversity" for this tiny class of cases, from a concern for the nature and permanence of the encroachment itself to a concern strictly for the existing easement-holder's interest in putting an end to it, the majority's rigid, mechanical (but universally applicable) rule[1] actually flies in the face of the policies and equities furthered by the doctrine of adverse possession. Presumably, the majority's rule would permit a forced removal of even a long-standing permanent structure, like a house, as long as the easement holder brings his action within eighteen years of actually deciding that he wants to make use of his easement and expressly demanding the structure's removal.

Whether the majority's rule has merit from a policy perspective, however, I consider a legislative matter. The majority, which dates its so-called "modern rule" from 1978, does not assert that it existed at the common law, as the General Assembly has allowed that law to remain in effect in this jurisdiction, *see* § 2–4–111, C.R.S. (2007), and the Restatement most certainly does not. *See* Restatement (Third) Property: Servitudes § 7.7 (2000). Nor do I consider this court constitutionally empowered to develop new exceptions to accepted common law doctrines, any more than legislative provisions,

---

with easement holder's interest in undeveloped easement and thus were not adverse).

**1.** Despite the concurring opinion's noble attempt to recast the majority rule in more palatable terms, the unyielding language of the majority's holding simply cannot be read to merely include nonuse as a consideration in the determination of adversity. "Following precedent in other jurisdictions," maj. op. at 1265, the majority adopts a hard and fast rule of accrual, preventing commencement of the limitations period until the easement holder decides to make use of his easement, even though a servient estate's encroachment be incompatible with every conceivable use by the holder.

under the guise of announcing evidentiary guidelines. To decide, as the majority does today, that in the limited case of expressly created but never used easements, the right to bring an action to enforce an obstructed easement accrues only upon actual need and unsuccessful demand by the easement holder, rather than upon any use openly incompatible with the easement holder's property interest, amounts to nothing less than judicially legislating substantive law.

Because I believe our form of government allocates to the General Assembly such legislative decisions, I respectfully dissent.