The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **March 20, 2023**

**No. A-1-CA-39046**

**MIMBRES HOT SPRINGS RANCH, INC.,**

Plaintiff-Appellee,

v.

**DAVID VARGAS and DEBORAH VARGAS,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Thomas F. Stewart, District Court Judge**

Douglas C. Littlejohn
Silver City, NM

for Appellee

Lopez, Dietzel, & Perkins, P.C.
William Perkins
Silver City, NM

for Appellants

**OPINION**

**HENDERSON, Judge.**

{1}     David and Deborah Vargas (Defendants) appeal from summary judgment in favor of Mimbres Hot Springs Ranch, Inc. (Plaintiff). The judgment required Defendants to remove a locked gate blocking vehicular access to Plaintiff's express easement over Defendants' property. The judgment further permitted Plaintiff to modify and maintain the roadway that constitutes the easement, to better accommodate vehicular access. This appeal requires us to determine whether Defendants' locked gate was sufficient to prescriptively extinguish Plaintiff's right to drive over the easement. We hold that an easement will be prescriptively extinguished, partially or completely, if the servient owner adversely uses the property in an open or notorious manner continuously for the prescriptive period. *See* Restatement (Third) of Prop.: Servitudes § 7.7 (2000). However, because Defendants' use of the easement was not sufficiently adverse, Plaintiff's easement was not prescriptively extinguished.

**BACKGROUND**

{2}     Neither party disputes any of the relevant facts. Plaintiff's property is comprised of an eastern and western parcel, divided in two by a creek. In 1981, a third party who owned property abutting Plaintiff's western parcel granted Plaintiff an express easement, twenty feet in width, for ingress and egress. The easement,

which consists of an old road, allows Plaintiff to access its western parcel without needing to cross the creek, which tends to flood during monsoon season.

{3}    In 1993, Defendants purchased the property from the third party, subject to Plaintiff's easement. When Defendants bought their property, there was already an existing locked wire gate, and even though that gate crossed the easement, they acknowledged Plaintiff had the right to drive over the easement. Soon after, Defendants replaced the locked wire gate with a locked metal tube gate across the easement. The gate is fenced on both sides, and is near, but not on, the parties' shared property line, which is unfenced. The gate has remained locked since it was first installed, and prevents any vehicular traffic from traveling the full length of Plaintiff's easement. Plaintiff had at one time driven over the easement prior to Defendants buying the property, but never after that point. Despite the gate, Plaintiff's individual members still used the easement for walking, hiking, and occasionally surveying the property, by going around the gate and adjoining fence.

{4}    Plaintiff knew it could not drive past the gate but did not immediately ask that the gate be opened or removed. This is because the gate also benefitted Plaintiff by reducing traffic over its property, traffic that could potentially harm the natural landscape Plaintiff wanted to preserve. However, around 2015 Plaintiff sought to build a house on its western parcel. It asked Defendants to remove the gate so that it could improve the easement into a road that could be driven on more easily.

Defendants denied Plaintiff's request and told Plaintiff in two separate letters that its easement was "not valid, due to non-use." Defendants threatened that if Plaintiff continued to use the easement they would take legal action.

{5}     Plaintiff beat Defendants to it. Two years after Defendants' second letter was sent, Plaintiff filed suit against Defendants, primarily for trespass. Plaintiff sought a declaration of its rights and to quiet title to the easement, along with an order enjoining Defendants from blocking it. Defendants counterclaimed seeking to quiet title in their favor, alleging the easement had either been abandoned or prescriptively extinguished. After roughly two more years had passed, Plaintiff filed a motion for summary judgment. Plaintiff's motion took aim at Defendants' counterclaim, arguing mainly that there was no evidence that Plaintiff intended to abandon its easement or that Defendants had adversely used the easement to extinguish it via prescription. Plaintiff also sought to establish that its easement, although expressly granted, was one of necessity not subject to abandonment or prescription.

{6}     The district court granted the motion. It found that Plaintiff made no affirmative acts "which unequivocally showed an intent to abandon [its] easement." Because Plaintiff had an interest in keeping the gate, and because the gate did not prevent Plaintiff's members from using the easement for "recreational purposes" other than driving, the district court found that failing to drive over the easement or cut the lock did not demonstrate an intent to abandon. Finally, the district court found

that "[t]here was a dearth of evidence to show" that the easement had been prescriptively extinguished. The district court did not rule on Plaintiff's necessity argument.

{7}     Defendants appealed. Like those below, the arguments offered by the parties on appeal center on the legal effect of the undisputed facts. However, Defendants no longer press that Plaintiff's easement has been abandoned. Instead, their only argument on appeal is that the easement has been prescriptively extinguished because (1) the locked gate violated Plaintiff's easement rights, (2) Plaintiff knew its rights were being violated, yet did nothing to stop Defendants, and (3) the locked gate had been in place for well over ten years, the prescriptive period. Although they initially claimed that the entire easement was extinguished, Defendants have limited their argument to attack only Plaintiff's right to drive over it.

**DISCUSSION**

{8}     Because the parties only dispute the legal effect of the underlying facts, we review the district court's legal conclusions on summary judgment de novo. *Amethyst Land Co. v. Terhune*, 2014-NMSC-015, ¶ 9, 362 P.3d 12. To resolve this appeal, we first discuss the law governing prescriptive extinguishment of easements. After explaining the necessary elements, we consider whether Defendants have met their burden of showing a genuine dispute exists as to each element so as to warrant a trial on the merits. *See Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004,

¶ 15, 296 P.3d 478. ("Once the movant makes a prima facie showing [of entitlement to judgment as a matter of law], the party opposing summary judgment has the burden to demonstrate the existence of specific evidentiary facts which would require trial on the merits." (internal quotation marks and citation omitted)). We conclude that they have not.

## I.      Prescriptive Extinguishment Jurisprudence

{9}      The parties do not agree on the law that should govern this dispute. Defendants argue that *Luevano v. Maestas*, 1994-NMCA-051, ¶ 13, 117 N.M. 580, 874 P.2d 788, dictates when an easement is prescriptively extinguished. Defendants also cite to multiple cases from other states, as well as the Restatement (Third) of Property. In contrast, Plaintiff contends that *Algermissen v. Sutin*, resolves any dispute over when an easement is prescriptively extinguished. 2003-NMSC-001, 133 N.M. 50, 61 P.3d 176. And like Defendants, Plaintiff also suggests that we should follow various approaches from other states and treatises. Ultimately, we believe that neither *Luevano* nor *Algermissen* alone completely state the law governing when an easement is prescriptively extinguished.

{10}      *Luevano* involved a dispute amongst neighbors, in which the plaintiffs sought to preclude use of a road that multiple properties abutted. 1994-NMCA-051, ¶¶ 5, 8-9. As part of their argument, the plaintiffs asserted that they had a greater right to the easement because it had been expressly granted to them, over any rights that may

5

have been created through public use. *Id.* ¶ 12. In clarifying that even the plaintiffs' express easement was vulnerable to interference, this Court explained that "[a]n easement appurtenant is subject to extinction by prescription of the estate to which the easement is appurtenant." *Id.* ¶ 13. This happens when a property owner whose property is burdened by the easement, the servient owner, uses their property in a way that is "adverse, and for the period of prescription, continuous and uninterrupted," to the easement owner's rights. *Id.* The whole of *Leuvano*'s discussion of prescriptive extinguishment relied on Section 506 comment b of the Restatement (First) of Property (1944). *See Luevano*, 1994-NMCA-051, ¶ 13. Other than recognizing the basic concept, however, the *Luevano* Court had no occasion to apply the rule to the facts of the case. *Luevano* was instead resolved in favor of the defendants, who had *created* rights in the road. *See id.* ¶¶ 31-32.

{11}   Beyond *Luevano*, New Mexico courts have not further addressed when an easement may be extinguished by prescription. And while it enunciated certain necessary elements for an easement to be extinguished by prescription, *Luevano* fails to offer any helpful analysis of them. In contrast, a significant number of cases have discussed the law concerning the creation of an easement by prescription. *See, e.g.*, *Algermissen*, 2003-NMSC-001; *Segura v. Van Dien*, 2015-NMCA-017, 344 P.3d 1009; *Brannock v. Lotus Fund*, 2016-NMCA-030, 367 P.2d 888; *Ulibarri v. Jesionowski*, 2023-NMCA-008, 523 P.3d 624. The modern statement of the

6

elements necessary to create an easement by prescription were laid out in *Algermissen*: "[A]n easement by prescription is created by an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period (of ten years)." 2003-NMSC-001, ¶ 10 (citing Restatement (Third) of Prop.: Servitudes §§ 2.16, 2.17 (2000)). *Algermissen* went on to elaborate on each element. "An adverse use is a use made without the consent of the landowner. It is also the type of use that would normally give rise to a cause of action in tort." *Id.* ¶ 11. "To be open, the use must be visible or apparent," and "[t]o be notorious, the claimant's use of the property must be either actually known to the owner or widely known in the neighborhood." *Id.* ¶ 19. Finally, "[f]or the use to be continuous, it must take place with the same consistency that a normal owner of the claimed servitude would make, so long as that use is reasonably frequent." *Id.* ¶ 23.

{12}     Thus far, it is apparent that the elements for prescriptively extinguishing an easement and prescriptively creating an easement both require an adverse use that is continued for the prescriptive period. The Restatement (Third) of Property, relied on throughout *Algermissen*, recognizes this connection as well: "Adverse uses meeting the requirements [to create an easement by prescription] that unreasonably interfere with easements . . ., if continued throughout the prescriptive period, extinguish the benefit of the servitude to the extent of the adverse use." Restatement (Third) of Prop.: Servitudes § 7.7 cmt. b; *see Algermissen*, 2003-NMSC-001, ¶¶ 10-11, 18-19,

23. Moreover, "[t]he rationale for extinguishing servitude benefits by prescription is the same as that for permitting their acquisition by prescription." Restatement (Third) of Prop.: Servitudes § 7.7 cmt. a (noting how interference with easement rights creates a "succession of causes of action" that prescription brings to a close); *see Algermissen*, 2003-NMSC-001, ¶ 11 (stating that adversity typically creates a cause of action in tort). Given the interrelation between prescriptively extinguishing and creating an easement, *Algermissen*'s additional development of the elements required to prescriptively create an easement may also be used to analyze when an easement is prescriptively extinguished.

{13}    The parties' arguments have highlighted, however, that *Leuvano*'s brief enumeration of the elements omitted the open or notorious requirement from *Algermissen*. In *Matoush v. Lovingood*, the Colorado Supreme Court recognized what we do here—that extinguishing an easement and creating an easement by prescription require elements that "mirror" each other. 177 P.3d 1262, 1269 (Colo. 2008) (en banc). The court thus adopted elements for prescriptively extinguishing an easement that mirror those for creating one by prescription. *Id.* at 1270. Those elements are the same as those our Supreme Court adopted in *Algermissen*, including that the servient owner's use be open or notorious. *See* 2003-NMSC-001, ¶ 10. The majority of the cases around the country also require that the use be open or notorious. *See Mid-Valley Res., Inc. v. Foxglove Properties, LLP*, 381 P.3d 910, 919-

8

20 (Or. Ct. App. 2016); *Childs v. Harada*, 311 P.3d 710, 722 (Haw. Ct. App. 2013); *Hansen v. Davis*, 220 P.3d 911, 916 (Alaska 2009); *Meadow Lake Estates Homeowners Ass'n v. Shoemaker*, 2008 MT 41, ¶ 36, 341 Mont. 345, 178 P.3d 81; *see also* Jon W. Bruce & James W. Ely, Jr., *The Law of Easements & Licenses in Land* § 10:25, Westlaw (database updated March 2023) ("In order for an easement to be extinguished by prescription, the servient owner's use or possession must satisfy the same elements required for obtaining an easement by prescription."); Bruce & Ely*, supra*, § 10:25 n.4 (collecting cases). 25 Am. Jur. 2d *Easements & Licenses* § 89, Westlaw (database updated February 2023) ("To claim adverse possession of an easement, the servient owner must prove . . . open and notorious use of the easement area . . . ." (footnotes omitted)); 25 Am. Jur. 2d *Easements & Licenses* § 89 n.4 (collecting cases). Ensuring the servient owner's use is open or notorious serves an important purpose: it establishes that the easement owner had notice of the adverse use and ample opportunity to protect against losing its rights. *See* Restatement (Third) of Prop.: Servitudes § 2.17 cmt. h. We follow the majority approach and conclude that a servient owner's adverse use must be open or notorious.

{14}     Although both prescriptively extinguishing an easement and prescriptively creating an easement require adverse use, there is an important conceptual and practical difference concerning that element. A servient owner already has the right

to use their property, including land over which an easement has been granted, unlike a prospective easement owner trying to establish rights by prescription. *See Matoush*, 177 P.3d at 1270; *Hansen*, 220 P.3d at 916. Thus, even "significant activity in the easement area by the servient owner may not be adverse to the easement holder's interest." Bruce & Ely, *supra*, § 10:25; *id.* § 10:25 n.10 (collecting cases). The use must interfere "significantly enough with the easement owner's enjoyment of the easement to give notice that the easement is under threat." 25 Am. Jur. 2d *Easements & Licenses* § 89. We believe such a requirement comports with New Mexico's acknowledgement that "[f]orfeitures of easements are not favored in law." *Ritter-Walker Co. v. Bell*, 1942-NMSC-008, ¶ 9, 46 N.M. 125, 123 P.2d 381.

{15}    Finally, because real property rights are divisible, extinguishment by prescription "may be complete or partial." Restatement (Third) of Prop.: Servitudes § 7.7 cmt. b. The extent to which the beneficial use of the easement is extinguished is based on which benefit is irreconcilable with the servient estate's prescriptive use. *See Pappas v. Maxwell*, 150 N.E.2d 521, 524-25 (Mass. 1958) ("Where . . . acts of the servient tenant render the use of only part of a right of way impossible, the easement is extinguished only as to that part."); 28A C.J.S. *Easements* § 157, Westlaw (database updated March 2023) ("[W]here the servient owner's use of land was entirely irreconcilable with certain uses of the easement and remained so for the prescriptive period, the easement is extinguished as to those uses.").

{16}    To summarize, an easement will be prescriptively extinguished if the servient owner's use of the area is (1) adverse to the easement owner's rights in the easement, (2) open or notorious, and (3) continuous without effective interruption for the prescriptive period (ten years). While different courts and treatises have used different language to explain the level of adversity required, it must amount to an unreasonable interference such that the easement owner is on "notice that the easement is under threat." 25 Am. Jur. 2d *Easements & Licenses* § 89; *see* Restatement (Third) of Prop.: Servitudes § 7.7 (requiring uses that "unreasonably interfere" with an easement owner's rights); *see, e.g.*, *Moutash*, 177 P.3d at 1270 (requiring "incompatible or irreconcilable" use). The extinguishment resulting from the servient owner's adverse use may be complete, or partial, based on the extent it interferes with the easement holder's rights.

**II.    Application**

{17}    Turning now to the facts at hand, we conclude that Defendants' use of their property—replacing a locked gate with their own locked gate over the easement—was not sufficiently adverse so as to put Plaintiff on notice that its rights were under threat. We note that *Algermissen* instructs on various presumptions that assist in determining adversity. *See* 2003-NMSC-001, ¶ 11. However, Defendants offer no argument on appeal that we should apply them in this case. Nor did they present such an argument to the district court. Because the parties do not argue that the

11

presumptions apply in the context of extinguishment, we do not address the question. We thus examine the facts to determine whether they demonstrate sufficient adversity.

{18} Our task is to determine whether Defendants unreasonably interfered with Plaintiff's enjoyment of the easement such that Plaintiff was on notice that the easement was under threat.[1] *See* 25 Am. Jur. 2d *Easements & Licenses* § 89; Restatement (Third) of Prop.: Servitudes § 7.7. This is a heavily fact dependent determination. *See* 25 Am. Jur. 2d *Easements & Licenses* § 89 ("Determining what constitutes unreasonable interference will be heavily fact dependent."); Bruce & Ely,

---

[1]Plaintiff would also have us adopt a rule from *Castle Associates v. Schwartz*, 407 N.Y.S.2d 717, 723 (N.Y. App. Div. 1978), which states,

> [W]here an easement has been created but no occasion has arisen for its use, the owner of the servient tenement may fence his land and such use will not be deemed adverse to the existence of the easement until such time as (1) the need for the right of way arises, (2) a demand is made by the owner of the dominant tenement that the easement be opened and (3) the owner of the servient tenement refuses to do so.

It has received mixed reception across the country. *See, e.g.*, *Matoush*, 177 P.3d at 1268 (adopting the *Castle* rule); *Halverson v. Turner*, 885 P.2d 1285, 1290 (Mont. 1994) (same). *But cf. Hansen*, 220 P.3d at 915 (criticizing and refusing to adopt the *Castle* rule); *Humphreys v. Wooldridge*, 408 S.W.3d 261, 270 n.7 (Mo. Ct. App. 2013) (finding the *Castle* rule "unpersuasive"). The rule was also limited in the state it was created to apply only to "easements not definitively located and developed through use" because they are "not yet in functional existence . . . ." *Spiegel v. Ferraro*, 541 N.E.2d 15, 17 (N.Y. 1989). However, this appeal does not require us to determine whether New Mexico follows the rule. And even if it did, it would be inapplicable in this case, as Plaintiff's easement was definitively located and used, even for vehicular use at one time. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 36, 137 N.M. 26, 106 P.3d 1273 ("A reviewing court generally does not decide academic . . . questions.").

*supra*, §10.25 ("Resolution of the adversity issue is heavily fact dependent. Only an examination of the numerous cases in the area can provide a sense of the type of activity that constitutes adverse use or possession." (footnote omitted)). Unsurprisingly, the effect of gates, fences, and other obstructions have long been evaluated by courts, resulting in a wide array of decisions hinging on the facts of each case. *See* Restatement (Third) of Prop: Servitudes § 4.9 (2000); *see, e.g.*, *Hansen*, 220 P.3d at 917; *Shors v. Branch*, 720 P.2d 239, 244 (Mont. 1986); *Sevier v. Locher*, 272 Cal. Rptr. 287, 290 (Ct. App. 1990); *Horecny v. Raichl*, 571 P.2d 495, 497 (Or. 1977).

{19}     Here, we conclude, based on the undisputed facts, that Defendants' use did not unreasonably interfere with Plaintiff's enjoyment of the easement and so did not put Plaintiff on notice that its rights in the easement were being threatened, even as to its right to drive over the easement. Defendants essentially argue that their locked gate was sufficiently adverse because it was a violation of Plaintiff's easement rights and Plaintiff did nothing to stop it. Even if both of these facts were true, however, in this case they do not alone demonstrate sufficient adversity. Defendants' gate merely replaced a locked gate that was already across the easement when Defendants bought the property, Defendants acknowledged that Plaintiff's easement permitted vehicular traffic, and no evidence was presented demonstrating that Defendants, through words or deeds, put Plaintiff on notice that the purpose of the replacement

13

gate was to thwart Plaintiff's use of the easement. *See Gandy Co. v. Freuer*, 313 N.W.2d. 576, 579 (Minn. 1981) (holding that a padlocked gate was not adverse when the "purpose of the lock was to keep hunters [off the property]"); *Sevier*, 272 Cal. Rptr. at 290 (locked gate adverse in part because the owner "refused to give" easement owner the key). The lack of such evidence is especially critical considering facts demonstrating that Plaintiff permitted the locked gate to remain in place because it benefited Plaintiff by restricting traffic over the property.

{20} Additionally, the locked gate is not on the parties' shared property line, which makes it unclear whether the purpose of the gate was to restrict Plaintiff's entry. *But see Hansen*, 220 P.3d at 916 (noting that an unreasonable interference is adverse in part because "such *extensive* use constitutes a 'distinct and positive assertion' by the servient estate owner that his or her use of the easement is hostile to the rights of the easement holder and is not merely a permissive use" (emphasis added)). Moreover, Defendants did nothing to restrict or otherwise dissuade Plaintiff's multifaceted use of the easement, which undoubtedly required circumventing the gate. By the time Defendants expressly contested Plaintiff's right to use the easement in their letters, it was 2015—even if this act demonstrated adverse use, it did not continue for the prescriptive period of ten years. The undisputed facts establish that Defendants did not satisfy the adversity element of an extinguishment claim.

{21} In trying to avoid this result, Defendants direct us to two New Mexico cases as support for the proposition that their gate is sufficiently adverse, but neither case offers analysis on when an obstruction is sufficient to prescriptively extinguish an easement—an act that requires a higher level of adversity. *See Huff v. McClannahan*, 1976-NMCA-121, ¶ 8, 89 N.M. 762, 557 P.2d 1111 (concluding that servient owner's placement of gates on easement "was unreasonable"); *Dethlefsen v. Weddel*, 2012-NMCA-077, ¶¶ 35-36, 284 P.3d 452 (determining that an easement grant was ambiguous as to whether it "contemplated the use of a lockable gate" and remanding for further proceedings).

{22} The cases Defendants cite from other jurisdictions are likewise inapposite. In *Public Lands Access Ass'n, Inc. v. Boone & Crocket Club Foundation, Inc.*, the Montana Supreme Court determined that the public lost any claim to a prescriptive easement when the servient owner engaged in an extensive program heavily restricting access to its property. 856 P.2d 525, 532 (Mont. 1993). There, the servient owner closed its road as part of a "walk-in" program with which the State of Montana assisted. *Id.* at 531. There were also clear signs indicating that no one was permitted to drive beyond the parking area, and that written permission was required to continue on foot or horseback on the servient owner's property. *Id.* Citations were even issued to people using the area without permission. *Id.* Here, Defendants never engaged in similarly extensive regulation of Plaintiff's easement such that

15

Defendants would know its use of the easement was being intentionally restricted, like the public's use of the land in *Boone & Crocket Club Foundation, Inc.*

{23}     The next case pressed by Defendants, *Yagjian v. O'Brien*, 477 N.E.2d 202 (Mass. App. Ct. 1985), likewise involved an extensive impediment to an easement. There, the entire length of the easement had been fenced off, either by a stone wall or wire fencing, such that any entry to the easement required passing over the fence or wall. *Id.* at 203. Here, most of Plaintiff's easement is accessible, even by vehicle. Finally, Defendants point us to *Sevier*, however, that case presented a situation where the defendants "extinguished [the plaintiff's] right to use [the easement] as a roadway for vehicles of all kinds, pedestrians and animals," with a six-foot gate that could not be avoided, and refused to provide the plaintiffs with a key—expressly putting the plaintiffs on notice of a restriction on their easement rights. 272 Cal. Rptr. at 290 (internal quotation marks omitted).

{24}     We hold that the district court properly entered summary judgment because, based on the undisputed facts, Defendants do not satisfy the adversity element for extinguishment by prescription. It is therefore unnecessary for us to determine whether the easement was one of necessity, not subject to extinguishment by prescription.

**CONCLUSION**

**{25}** For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Plaintiff. Each party shall bear their own costs and attorney fees on appeal.

**{26}** **IT IS SO ORDERED.**

_____
**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

_____
**ZACHARY A. IVES, Judge**

_____
**JANE B. YOHALEM, Judge**