NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-68

MICHAEL R. GREANY & another[1]

vs.

RICHARD E. TERSAVICH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The parties to this action are neighbors who share a driveway that traverses land owned by the defendant, Richard Tersavich (Tersavich).  The plaintiffs, Michael and Sharon Greany (the Greanys), have a right to use the driveway to access their property pursuant to an express easement contained in their deed.  After a series of disagreements between the parties, Tersavich installed several surveillance cameras along and speed bumps on the driveway.  In response, the Greanys commenced this action alleging that the cameras and speed bumps materially interfered with their rights under the easement and requested an order for their removal and other declaratory

---

[1] Sharon D. Greany.

relief. Following a trial, a Land Court judge entered judgment in favor of the Greanys and ordered the removal of both the cameras located along the driveway and the speed bumps. We affirm.

Background. We recite the facts based on the detailed findings of the trial judge. In May of 2018, Tersavich and his wife, Joanne Tersavich, acquired title to certain property in Westfield off Eastwood Drive. In June of the same year, the Greanys acquired title to the adjacent property and moved in with their two children (ages six and ten years old at the time of trial). The parties' properties share a boundary, and in order to reach each home, one must travel along a driveway that is located entirely on Tersavich's property.[2] The driveway starts at Eastwood Drive and rises for more than 200 feet to a flat area that extends, at least, another 200 feet past Tersavich's house to the Greany property where the driveway ends.

Pursuant to language contained within the deeds of both the Greanys' and Tersavich's properties, the Greanys' property is

---

[2] Portions of the facts relevant to our analysis were acquired by the judge when he viewed the property. As such, we note that a view "inevitably has the effect of evidence, and information properly acquired upon a view may properly be treated as evidence in the case" (quotations and citations omitted). Talmo v. Zoning Bd. of Appeals of Framingham, 93 Mass. App. Ct. 626, 629 n.5 (2018).

2

benefited by an easement "over and across [the] driveway" for access to and from Eastwood Drive, "by vehicle or otherwise." Moreover, the parties are bound by a Shared Maintenance Agreement, recorded in the Hampden Registry of Deeds in 1990, states that it runs with the land of both properties and requires the parties to bear equal responsibility for repairs and maintenance expenses "that are reasonable and necessary for all utilities [sic] that are common to both properties and to the driveway that services both properties."

In 2020, after a disagreement between the parties that led to the police being called, Tersavich installed surveillance cameras along the driveway. The judge found that, at one point, there were thirteen cameras installed on Tersavich's property, with at least four pointed directly on the driveway. At trial, the Greanys testified that the camera monitoring of the driveway caused them discomfort to such a degree that they limited their use of the driveway and requested a change in one child's bus stop so as to avoid the child being recorded by the cameras pointed at the driveway.

Later, in the spring of 2021, Tersavich installed four speed bumps, approximately fifty feet apart, along the flat area of the driveway. Joanne Tersavich testified that the speed bumps were installed as a safety measure to slow the cars and delivery trucks that use the driveway to get to the Greany

3

property.  She did not, however, provide evidence of the speed of the vehicles that traveled on the driveway.  Tersavich, himself, testified that one reason was to "slow down traffic, but the other half of it [was] to minimize traffic" -- "to minimize the amount of cars going up and down."[3]

In May of 2022, the Greanys filed the present action in the Land Court requesting declaratory and injunctive relief to enjoin Tersavich from "interfering with and impeding the express and implied rights and protections afforded to . . . [them] for the use and enjoyment of their property rights."  Tersavich submitted an answer and counterclaim, wherein he asserted that (1) the surveillance cameras were installed "to provide security for his family," (2) the speed bumps did not interfere with the Greanys' reasonable use of the driveway, and (3) he was entitled to reimbursement for the cost of work performed on a subsurface water pipe under the driveway, pursuant to the Shared Maintenance Agreement.

On May 16, 2024, the judge conducted a view of the properties and driveway.  The trial commenced on May 20, 2024. Following the trial, the judge ruled in favor of the Greanys.

---

[3] In addition to installing surveillance cameras and speed bumps, Tersavich also posted signs along the driveway, several of which read "ONE LANE DRIVEWAY NOT A FUCKING STREET," "STAY OFF OUR FUCKING GRASS If You're with #15," and "PRIVATE PROPERTY NOT A RACETRACK."

The judge found that the installation of the surveillance cameras along the driveway "constitute[d] an unjustified invasion of the Greanys' privacy," given the Greanys' testimony that the "constant surveillance of their use of the driveway, particularly by their children," made them feel "uncomfortable." The judge did not credit Tersavich's testimony that the surveillance cameras were installed for security purposes, finding that, coupled with the signs posted along the driveway, the cameras were installed for the sole purpose of intimidating the Greanys, in the hope that they would use the driveway less frequently. Regarding the speed bumps, the judge found, based on Tersavich's testimony, that they were installed to "deter use of the driveway by the Greanys and their invitees," and thus, materially interfered with the Greanys' rights to use the driveway, especially given the evidence that the Greanys were unable to drive their Corvette over the bumps because of their height and the concern for damage to their vehicle because the spikes sometimes protruded from the bumps. As to Tersavich's counterclaim for reimbursement, the judge concluded that there was "insufficient evidence as to what work was done," the purpose of the work, and "whether the work [fell] into the category of a shared utility cost" under the Shared Maintenance Agreement.

Final judgment entered in favor of the Greanys and against Tersavich on all claims. In addition, the judge ordered the removal of "all surveillance cameras located along the driveway or which point in the direction of the [Greanys'] property" as well as the "speed bumps that are located on the driveway."[4] Tersavich appeals.

Discussion. 1. Standard of review. On appeal from a judgment after trial, "we accept the trial judge's findings of fact unless they are 'clearly erroneous,' and do not review questions of fact if any reasonable view of the evidence and the rational inferences to be drawn therefrom support the judge's findings" (citations omitted). Martin v. Simmons Props., LLC, 467 Mass. 1, 8 (2014). We uphold the findings of fact of a judge who saw and heard the witnesses unless we are of the "definite and firm conviction that a mistake" has been made (quotation and citation omitted). Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 509 (1997). We, however, apply de novo review to conclusions of law. See Martin, supra. Applying these standards, we discern no error in the judge's review of the evidence and legal conclusions drawn therefrom.

---

[4] In his decision, the judge also concluded that "the Greanys are not entitled to a blanket injunction against the use of any speed bumps on the common driveway[,]" but that the parties may agree that speed bumps of an agreed upon type, size, and number may be installed.

6

As the owner of the servient estate, Tersavich is entitled to make use of his land insofar as it is consistent with and does not materially interfere with the Greanys' easement rights as the dominant estate. See Highland Club of W. Roxbury v. John Hancock Mut. Life Ins. Co., 327 Mass. 711, 714-715 (1951). See also Perry v. Nemira, 91 Mass. App. Ct. 12, 20 (2017). In determining whether a servient estate's use of its land materially interferes with the dominant estate's rights, courts "have tended to weigh slight inconvenience to the dominant owner's use of the way against the servient owner's freedom to use his property in a reasonable manner for his own benefit and convenience and to strike an equitable balance." Yagjian v. O'Brien, 19 Mass. App. Ct. 733, 735 (1985). "The question is whether the interference is so slight as to be reasonable in all the circumstances." Id. On appeal, Tersavich raises several arguments, which we address in turn.

2. Installation of cameras. First, Tersavich contends that the judge erred in stating that the surveillance cameras pointed at the driveway "constitute[d] an unjustified invasion of the Greanys' privacy" because the Greanys did not sufficiently plead or raise evidence at trial to prevail on a standalone invasion of privacy claim.[5] This argument is

---

[5] Massachusetts courts have not recognized "invasion of privacy" as a common law cause of action. See Alberts v.

7

unavailing, however, as it misconstrues the judge's factual findings related to the installation of the cameras as an adjudication of a statutory tort claim.  Although the Greanys alleged in their complaint that Tersavich unlawfully invaded their "privacy rights" by installing the cameras along the driveway and recording activity occurring thereupon, these allegations did not constitute a basis for relief on the grounds of an "invasion of privacy" tort or statutory claim, but rather, described the means by which the cameras materially interfered with the Greanys' use of the driveway.  Viewed in the context of the entire decision, we conclude that the judge's reference to the "unjustified invasion of the Greanys' privacy" was simply a framing and characterization of Tersavich's conduct -- installing the cameras with the intent to intimidate the Greanys -- which the judge concluded constituted a material interference with the Greanys' right to use the easement.  Accordingly, it is immaterial whether the Greanys sufficiently pleaded or demonstrated at trial facts required to prevail on a standalone invasion of privacy claim.

---

Devine, 395 Mass. 59, 70 (1985).  A person may seek protection under G. L. c. 214, § 1B, however, which provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy.  The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

8

Next, Tersavich argues that the evidence presented at trial was insufficient to prove that the surveillance cameras "materially interfered" with the Greanys' use of the driveway . Specifically, Tersavich contends that because (1) there was no evidence that the cameras "physically prevented" the Greanys or their children from using the driveway, and (2) there was evidence that the Greanys continued to use the easement after the installation of the cameras, albeit in a decreased capacity, any interference caused by the cameras was slight.  This argument fails as it ignores the judge's findings that the cameras interfered with the Greanys' ability to use the driveway without the inconvenience of constant surveillance or the unease of not knowing where the video recordings were being stored. Texon, Inc. v. Holyoke Mach. Co., 8 Mass. App. Ct. 363, 366 (1979) ("The owner of the servient estate may not use the property subject to the easement in a way that would lead to a material increase in the . . . inconvenience to the easement holder's exercise of his rights").  Where, as a result of Tersavich's installation of the cameras with the intent to intimidate the Greanys the Greanys began limiting use of the driveway and requested a new bus stop for their child so as to avoid the cameras, there was sufficient evidence to show that the cameras materially interfered with their right to use the driveway.  See Hodgkins v. Bianchini, 323 Mass. 169, 173 (1948)

9

("When an easement or other property right is created, every right necessary for its enjoyment is included by implication" [citation omitted; emphasis added]).  Cf. Ayasli v. Armstrong, 56 Mass. App. Ct. 740, 742-745, 753 (2002) (concluding that where defendants' conduct was designed to make the plaintiffs so uncomfortable they would abandon use of property, jury could have found conduct constituted "persistent efforts to disturb the plaintiffs' enjoyment of their land ").

Additionally, Tersavich argues that the judge's final judgment, wherein he ordered the removal of "all surveillance cameras located along the driveway or which point in the direction of the Plaintiffs' property," was overbroad.  We disagree.  First, we note that the judge's order does not require the removal of any cameras directed solely at Tersavich's property, such as a camera facing Tersavich's front door or backyard.  Rather, given that the judge discredited Tersavich's purported safety justification for installing the cameras, the order is narrowly tailored to address only those cameras which face the driveway or the Greanys' property. Because we find no clear error in these findings, we discern no error in the scope of the judge's order related to the removal of the cameras.

3. Reimbursement.  Lastly, Tersavich argues that the judge erred in concluding that he was not entitled to reimbursement,

10

pursuant to the Shared Maintenance Agreement, for the cost of repair work purportedly done to a water pipe underneath the driveway.  Tersavich advances no legal argument or case law in support of his argument, and thus, it does not reach the level of appellate argument.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).  Notwithstanding, as noted above, the judge did not credit the invoice submitted as to whether the work performed constituted a shared expense. Indeed, the invoice does not indicate any amount paid or whether the repairs were "reasonable and necessary" as required by the Shared Maintenance Agreement.  Thus, we conclude that the judge did not err in concluding that Tersavich was not entitled to reimbursement.

<u>Judgment affirmed</u>.

By the Court (Rubin, Desmond & Allen, JJ.[6]),

Clerk

Entered:  June 29, 2026.

---

[6] The panelists are listed in order of seniority.